UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
 HISAN LEE,

                    Petitioner,              07-cr-0003 (LAP)

           -against-                         17-cv-8567 (LAP)

 UNITED STATES OF AMERICA
                                             OPINION & ORDER
                    Respondent.
└─────────────────────────────────────────┘
```

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Petitioner Hisan Lee's pro se motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence, primarily due to alleged ineffective assistance of counsel and prosecutorial misconduct.[1]  Mr. Lee also requests discovery relating to his § 2255 claims.[2]  The Government opposes the motion.[3]  Mr. Lee replied to the Government's opposition.[4]

---

[1] (See Mot. to Vacate ("Mot. Vacate"), dated October 27, 2017 [dkt. no. 686 in 07-cr-0003]; dkt. no. 1 in 17-8567; see also Pet'r's Mem. in Supp. of Mot. Vacate ("Pet. Mem."), dated Nov. 29, 2017 [dkt. no. 6 in 17-cv-8567].)  Unless otherwise specified, all citations to docket entries herein refer to 07-cr-0003.
[2] (See Mot. for Appointment of Counsel, Disc. and Evidentiary Hr'g in Furtherance of Mot. for § 2255 ("Disc. Requ."), dated July 3, 2018 [dkt. no. 13 in 17-cv-8567].)
[3] (See Mem. in Opp'n to Mot. Vacate ("Opp'n Mem."), dated Sept. 18, 2018 [dkt. no. 764].)
[4] (See Reply to Opp'n ("Pet. Reply"), dated Oct. 23, 2018 [dkt. no. 774].)

For the reasons set forth below, Petitioner's § 2255 motion and request for discovery pertaining to his § 2255 claims are denied.

I.   Background

Mr. Lee and his co-defendants were involved in a racketeering "enterprise," as defined by 18 U.S.C. § 1961(4), known as the DeKalb Avenue Crew, which operated principally around DeKalb Avenue in the Bronx during the 1990s and 2000s. (See Superseding Indictment, dated Feb. 20, 2008 [dkt. no. 93], at 2-3); United States v. Lee, 834 F.3d 145, 149 (2d Cir. 2016). In furtherance of the enterprise, Mr. Lee and his co-defendants "engaged in extensive drug dealing, violence, robberies of drug dealers, and murders."  See Lee, 834 F.3d at 149.

a. Indictment

On February 20, 2008, a grand jury charged Mr. Lee and his co-defendants in a thirty-five-count Superseding Indictment (the "Indictment").  (See dkt. no. 93.)  The Indictment charged the defendants with engaging in "among other things, armed robbery, narcotics trafficking, and murder."  (Id. at 2-3.)  Mr. Lee himself was charged with fourteen counts.  The charges relevant to this motion are briefly summarized below.

Count One charged Mr. Lee and his co-defendants with racketeering through the commission of five acts, including conspiracy to commit robbery, attempted robbery, robbery,

kidnapping, felony murder, and narcotics conspiracy.   (See id.
at 2-11, 13-14, 22-22.)   Count Two charged Mr. Lee with
racketeering conspiracy.   (See id. at 22-23.)   Counts Three and
Eight charged Mr. Lee with the murder of Patrick Taylor in aid
of racketeering, (see id. at 24-25), and in connection with a
drug crime, (see id. at 35), respectively.   Count Four charged
Mr. Lee with the murder of Oneil Johnson in aid of racketeering.
(See id. at 26.)   Count Seven charged Mr. Lee with narcotics
conspiracy.   (See id. at 29-30, 32.)   Count Nine charged Mr. Lee
with various robbery offenses, including robbery conspiracy,
attempted robbery, and robbery, in violation of 18 U.S.C. § 1951
(the "Hobbs Act").   (See id. at 35-38.)   Counts Ten and Eleven
charged Mr. Lee with attempted robbery, (see id. at 38), and
robbery, (see id. at 39), respectively, both in violation of the
Hobbs Act and 18 U.S.C. § 2.   Finally, Counts Twenty through
Twenty-Four charged Mr. Lee with various firearms offenses
involving the use, carrying, and possession of firearms in
furtherance of the offenses charged in Counts Seven, Ten, and
Eleven.   (See id. at 45-49.)

   b. Trial and Sentencing

   Following a six-week trial before Judge Barbara S. Jones,
on April 5, 2010, a jury found Mr. Lee guilty of all counts
against him.   (See dkt. no. 411; Opp'n Mem. at 1.)   On March 25,
2011, Judge Jones sentenced Mr. Lee to life imprisonment plus

thirty years, with ten years supervised release.  (See dkt. no. 500, at 3-4.)

### c. The Defendant's Appeal

On January 16, 2013, Mr. Lee's case was reassigned to this Court.  (See dkt. no. 589.)  Subsequently, on August 24, 2016, Mr. Lee appealed his conviction.  (See Opp'n Mem. at 11.)

On direct appeal, Mr. Lee principally challenged (1) "the sufficiency of the evidence to prove the interstate commerce element of [the] various charged substantive Hobbs Act robberies,"[5] (dkt. no. 637, at 6, 13-15, 20-21; see dkt. no. 93, at 35-39); and (2) that the DeKalb Avenue Crew was an "enterprise" within the meaning of the RICO statute, (see dkt. no. 649, at 9-10).  Mr. Lee also argued that the district court: (1) failed to investigate an individual juror's mental state; (2) provided insufficient jury instructions; (3) unconstitutionally limited the cross-examination of a witness; and (4) imposed an unreasonable sentence, namely that stacking the § 924(c) sentences was erroneous, a jury instruction was erroneous, and that he received ineffective assistance of trial counsel.  (See id. at 16-17, 21-25.)  The

---

[5] (See Summ. Order, dated Nov. 8, 2016 [dkt. no. 649], at 22.) Mr. Lee also disputed whether the Hobbs Act could "apply to narcotics robberies because the victims do not have a lawful property right or possessory interest in illegal goods or criminal proceeds," an argument which the Court of Appeals rejected as without merit.  (Id.)

Court of Appeals denied each of Mr. Lee's arguments.  (See dkt.
no. 637; Summary Order, dated Aug. 24, 2016) [dkt. no. 649]);
Lee, 834 F.3d at 162.  However, the Court of Appeals further
held that Mr. Lee's ineffective assistance claims were not yet
ripe for review and "may be presented in a motion pursuant to 28
U.S.C. § 2255."  (See dkt. no. 649, at 25.)

     d. The Instant Motion

    Subsequently, on October 27, 2017, Mr. Lee filed the
instant pro se motion to vacate, set aside, or correct his
sentence pursuant to 28 U.S.C. § 2255.  (See Mot. Vacate; see
also Pet. Mem.)  Mr. Lee's motion raised claims of (1)
ineffective assistance of trial counsel; (2) ineffective
assistance of appellate counsel; and (3) prosecutorial
misconduct.  (See Mot. Vacate; see also Pet. Mem.)  On July 8,
2018, Mr. Lee also filed a motion for appointment of counsel,
discovery, and an evidentiary hearing in furtherance of his
§ 2255 motion.  (See Disc. Requ.)  Mr. Lee's request for counsel

was denied.   (See dkt. no 40 in 17-cv-8567.)   Accordingly,

before the Court are Petitioner's remaining habeas claims.[6]

## II.   Legal Standards

### a. The Habeas Statute and The Mandate Rule

Under 28 U.S.C. § 2255, a federal prisoner "may move the

court which imposed the sentence to vacate, set aside, or

correct the sentence" on the grounds, inter alia, that the

"sentence was imposed in violation of the Constitution or laws

of the United States . . . or is otherwise subject to collateral

attack." 28 U.S.C. § 2255(a).

Generally, however, a § 2255 motion may not be used to

relitigate issues already decided on direct appeal.  See Burrell

v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United

States v. Minicone, 994 F.2d 86, 89 (2d Cir. 1993).  This is

known as the mandate rule.  Mui v. United States, 614 F.3d 50,

53 (2d Cir. 2010).  The mandate rule "prevents re-litigation in

the district court not only of matters expressly decided by the

appellate court, but also precludes re-litigation of issues

impliedly resolved by the appellate court's mandate." Id.; see

also United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001).

---

[6] This Court will not address Petitioner's ineffective assistance
claim regarding appellate counsel's failure to petition for a
rehearing before the Second Circuit, (see Pet. Mem. at 9-11),
because that claim was previously resolved, (see Opp'n Mem. at
1, note 2; see also dkt. no. 7 in 17-cv-8567; dkt. no. 8 in 17-
cv-8567; dkt. no 717).

In the specific context of § 2255 ineffective assistance of
counsel litigation, the Second Circuit has applied the mandate
rule "when the factual predicates of []claims, while not
explicitly raised on direct appeal, were nonetheless impliedly
rejected by the appellate court mandate." Mui, 614 F.3d at 53;
see also, e.g., United States v. Pitcher, 559 F.3d 120, 124 (2d
Cir. 2009).

   b. Ineffective Assistance of Counsel

   The Sixth Amendment guarantees a criminal defendant the
right to effective assistance from counsel. See Eze v.
Senkowski, 321 F.3d 110, 124 (2d Cir. 2003). To establish a
claim for ineffective assistance of counsel, a petitioner must
meet the heavy burden of proving that the conviction "resulted
from a breakdown in the adversary process that renders the
result unreliable." Strickland v. Washington, 466 U.S. 668, 687
(1984). To satisfy the two-prong test set forth in Strickland,
a petitioner must show both that "counsel's representation fell
below an objective standard of reasonableness" and that he
suffered prejudice as a result. Id. at 688, 693. Assessment of
prejudice lies in whether there is a "reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different." Id. at 694.

   To assess whether counsel's performance fell below an
objective standard of reasonableness, the court must bear in

mind the "strong" presumption that "counsel has rendered
adequate assistance." Id. at 690. "Strategic choices made
after thorough investigation of [the] law and facts . . . are
virtually unchallengeable; and strategic choices made after less
than complete investigation are reasonable precisely to the
extent that reasonable professional judgments support the
limitations on investigation." Id. at 690-91. In other words,
counsel has a duty to investigate potentially relevant facts,
unless a reasonable judgment would render particular
investigations unnecessary. Id. at 691.

To satisfy the second prong of the Strickland test, there
must be a reasonable probability, i.e., "a probability
sufficient to undermine confidence in the outcome," that "but
for counsel's unprofessional errors, the result of the
proceeding would have been different." See id. at 694. The
ultimate question in assessing prejudice is whether, "absent the
errors, the factfinder would have had a reasonable doubt" as to
the defendant's guilt. Id. at 695. The performance and
prejudice prongs need not be addressed in any particular order,
and "[i]f it is easier to dispose of an ineffectiveness claim on
the ground of lack of sufficient prejudice, . . . that course
should be followed." See id. at 697. The same inquiry applies

to both trial and appellate counsel.  See Turner v. Sabourin,
217 F.R.D. 136, 141 (E.D.N.Y. 2003).

     c. Prosecutorial Misconduct

     Pursuant to 28 U.S.C. § 2255, prosecutorial misconduct is
only a ground for relief if the conduct caused the defendant
"substantial prejudice by so infecting the trial with unfairness
as to make the resulting conviction a denial of due process."
United States v. Elias, 285 F.3d 183, 190 (2002) (cleaned up).

     Regarding allegations that the prosecution suppressed
evidence favorable to the defendant, the court will find a
violation of due process "where the evidence is material either
to guilt or to punishment, irrespective of the good faith or bad
faith of the prosecution."  Kyles v. Whitely, 514 U.S. 419, 432
(1995).  Moreover, the Supreme Court has found three situations
that may support a claim of prosecutorial misconduct for alleged
suppression of material evidence: (1) "where previously
undisclosed evidence revealed that the prosecution introduced
trial testimony that it knew or should have known was perjured";
(2) "where the Government failed to accede to a defense request
for disclosure of some specific kind of exculpatory evidence";
or (3) "where the Government failed to volunteer exculpatory
evidence never requested, or requested only in a general way,"

but only if suppression is significant enough to violate the defendant's right to a fair trial.  Id. at 433.

To warrant reversal of claims alleging that the prosecutor made improper comments, the petitioner must show "(1) that the prosecutor's remarks were improper and (2) that the remarks, taken in the context of the entire trial, resulted in substantial prejudice."  United States v. Bautista, 23 F.3d 726, 732 (2d Cir. 1994).  To satisfy the substantial prejudice prong, the Court considers "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements."  United States v. Thomas, 377 F.3d 232, 245 (2d Cir. 2004).  However, inappropriate comments standing alone are generally an insufficient basis for reversal; rather, the alleged misconduct must "amount[] to prejudicial error."  United States v. Young, 470 U.S. 1, 12 (1985).

d. Discovery Requests

Generally, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course," Bracy v. Gramley, 520 U.S. 899, 904 (1997), and must meet a heavy burden to establish their right to discovery, see Pizzuti v. United States, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011).

Rule 6 of the Rules Governing Section 2255 Proceedings provides that a petitioner is entitled to discovery only if the judge, "for good cause," grants leave to do so.  See 28 U.S.C. § 2255, Rule 6(a).  Good cause is shown only if the petitioner presents "specific allegations . . . show[ing] reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy, 520 U.S. at 908-09 (cleaned up).  However, "generalized statements regarding the possibility of the existence of discoverable material" are insufficient.  Pizzuti, 809 F. Supp. 2d at 176.

## III. **Discussion**

### a. Patrick Taylor Incident

In or about August 23, 2000, Patrick Taylor was the victim of a robbery, kidnapping, and murder.  (See dkt. no. 93, at 6-8.)  Subsequently, Mr. Lee and Delroy Lee were charged with racketeering, (see id.), and the murder of Mr. Taylor in furtherance of the robbery, (see id. at 24-25).

In relation to the Patrick Taylor incident and pursuant to Petitioner's § 2255 motion, Mr. Lee raises several claims of ineffective assistance of trial counsel,[7] primarily grounded in

---

[7] Petitioner was represented at trial by Michael H. Sporn, counsel appointed pursuant to the Criminal Justice Act.  (See Decl. of Michael H. Sporn ("Sporn Decl."), dated July 19, 2018 [dkt. no. 751].)

the following arguments: (1) Mr. Sporn failed to establish the fact that Maxine Clark could not and did not identify Mr. Lee as the perpetrator of the crimes at issue; (2) Mr. Sporn was deficient for not cross-examining Detective Coffey as to Kasseem Wellington's confession; (3) Mr. Sporn failed to investigate physical evidence, namely, fingerprints found at the crime scene; and (4) the prosecutor committed misconduct, which exacerbated Mr. Sporn's deficient performance. (See Mot. Vacate at 5-6; Pet. Mem. at 15-29.) The Court will address each argument in turn.

### 1. Cross-Examination of Maxine Clark

Petitioner claims he received ineffective assistance from Mr. Sporn, in part, because Mr. Sporn failed "to develop the fact that [Government witness] Maxine Clark could not identify [Petitioner] as the perpetrator" of the Patrick Taylor robbery and homicide.[8] (See Pet. Mem. at 15-22.)

In so alleging, Petitioner relies on two assumptions.[9] First, Petitioner assumes that Mr. Sporn had not seen the New York City Police Department (the "NYCPD") report (the "DD-5") issued after the homicide of Mr. Taylor, recounting that the

---

[8] Maxine Clark, Patrick Taylor's girlfriend, owned the apartment in which the robbery and murder of Mr. Taylor occurred. (See Trial Tr. at 4757:11-12.)

[9] Petitioner alleges that Mr. Sporn was alerted, through discovery, to the fact that Mr. Lee was a suspect in the robbery and homicide of Patrick Taylor. (See Pet. Mem. at 19.)

NYCPD received a call from an individual naming Mr. Lee as the perpetrator. (See id. at 17; see also id. at Ex. D.) Second, Petitioner argues that because he was named as a suspect, investigators must have shown Ms. Clark his photograph in determining whether she could identify the perpetrator. (Id. at 20.) In sum, Petitioner alleges that Mr. Sporn provided ineffective assistance for failing to develop the fact that investigators showed Ms. Clark a photograph of Mr. Lee, but that Ms. Clark failed to identify Mr. Lee as the perpetrator. (See id. at 20.)

First, Petitioner's allegation that Mr. Sporn had not seen the DD-5 is undermined by the record because Mr. Sporn admits that he reviewed the DD-5. (See Sporn Decl. ¶ 3.) Second, Mr. Lee's argument that his photograph was among those shown to Ms. Clark is speculation, not fact, as he suggests. (See Pet. Mem. at 17-20; see also Sporn Decl. ¶ 4.) It is not certain that merely because Petitioner was named as a person of interest in the incident that Mr. Lee's photograph was among those in the investigators' database, i.e., the PIMS system. (See Opp'n Mem. at 19; see also Trial Tr. at 1806:14-1807:9 (explaining the mechanics of the PIMS system wherein photographs are pulled based on a physical description provided by the witness and it is "kind of a shot in the dark at that point if the viewer recognizes anyone").)

Contrary to Mr. Lee's assertions, the record reflects that Mr. Sporn acted reasonably at every step. For example, only after Ms. Clark testified and the defense received Ms. Clark's § 3500 materials did the defense realize that the investigators showed Ms. Clark images based on her physical description of the individuals she saw committing the robbery. (See Sporn Decl. ¶ 4.) Mr. Sporn then raised the possibility with the Court and the Government that Mr. Lee's photograph was among that sample, (see Trial Tr. at 1805:6–1806:6), upon which it became evident that there was no way to confirm whether Mr. Lee's photograph was in fact shown to Ms. Clark. (See Sporn Decl. ¶ 4; Trial Tr. at 1805–1808; see also Opp'n Mem. at 19 ("As represented to the court during trial, it is the government's understanding that no record was made of which photographs were shown to Clark.").)

While it is not apparent from the record whether Mr. Sporn took further steps to investigate the circumstances of the PIMS system, whether he did or did not is insignificant. The law does not require perfection but rather asks whether the attorney's performance fell below an objective standard of reasonableness, see Strickland, 466 U.S. at 687–88, which here, it did not.

Further, there is no evidence that Mr. Lee suffered prejudice because of Mr. Sporn's actions. The jury was presented with Ms. Clark's testimony that she had not identified

the men who entered her apartment on the day of the Patrick

Taylor incident.  (See Trial Tr. at 1708:22-24.)   In addition,

Mr. Sporn argued in closing that Mr. Lee's photograph likely had

been among those shown to Ms. Clark, and that she had failed to

identify him as a perpetrator.  (See id. at 4758:7-12.)

Accordingly, the record fails to support a finding of prejudice.

### 2. Cross-Examination of Detective Coffey

Further to the Patrick Taylor incident, Petitioner alleges

that Mr. Sporn was ineffective insofar as he neglected to cross-

examine government witness Detective Coffey about Kasseem

Wellington's confession to possessing the drugs that the

Government alleged belonged to Mr. Lee.[10]   (See Pet. Mem. at 23.)

At trial, the Government argued that Mr. Lee had stolen drugs

from Mr. Taylor to later sell for higher prices in Virginia.

(See Opp'n Mem. at 16.)   Accordingly, the Government proffered

that following the robbery and murder of Mr. Taylor, Mr. Lee and

his business associates traveled from New York to Virginia,

where Mr. Lee was later arrested.  (See id.)   In Mr. Lee's view,

testimony regarding Mr. Wellington's confession would have

undermined the Government's factual narrative, thereby "casting

---

[10] Petitioner previously raised this claim, but the trial judge
rejected it primarily based on the testimony of Mr. Lee's former
girlfriend.  (See dkt. no. 491, at 5.)   Such testimony is
further explained below.

doubt on who [bore] ultimate responsibility" for the drugs discovered in Virginia.  (See Pet. Mem. at 24.)

While not squarely addressing his decision not to cross-examine Detective Coffey on this issue, Mr. Sporn represents that he attempted to pursue a counter-narrative, including "sending an investigator to Virginia and tracking down a local reporter to get the minutes of proceedings there," after which it became apparent that Mr. Wellington "either could not be found, did not want to testify or gave interviews inconsistent with [his] purported statements to Detective Coffey." (Sporn Decl. ¶ 6.)  Not only does Mr. Sporn's decision not to further pursue this lead fall within the "wide range of reasonableness" against which counsel's conduct is adjudged, see United States v. Carey, No. 09-cr-441 (DRH), 2018 WL 4863590, at *2 (E.D.N.Y. Sept. 28, 2018), but the record also reflects that counsel made a reasonable decision in light of the facts known to him at the time.[11]  Accordingly, counsel's decision not to cross-examine Detective Coffey was a strategic trial decision that does not support an ineffectiveness claim.

_____

[11] See Strickland, 466 U.S. at 681 ("[W]hen counsel's assumptions are reasonable given the totality of the circumstances and when counsel's strategy represents a reasonable choice based upon those assumptions, counsel need not investigate lines of defense that he has chosen not to employ at trial.").

Further, while Petitioner claims that counsel's inaction prejudiced him in some capacity, he has failed to allege sufficient support for this contention.  See Matura v. United States, 875 F. Supp. 235, 238 (S.D.N.Y. 1995).  Mr. Lee's former girlfriend's testimony regarding how she packaged the drugs and later identified the package recovered in Virginia further cuts against Petitioner's claim of prejudice.  (See Order, dated March 24, 2011 [dkt. no. 491], at 5.)  Mr. Sporn and the trial court described this evidence as "devastating," and "sufficiently unique," such that any potential testimony put forth regarding Mr. Wellington's confession would have been substantially undercut. (See id.; Sporn Decl. ¶ 7.)

### 3. Insufficient Investigation of Fingerprints

Petitioner also alleges that Mr. Sporn failed effectively to investigate the source of fingerprints found at the scene of the Patrick Taylor incident.  (See Pet. Mem. at 28-29.) Petitioner's argument fails both prongs of Strickland.  466 U.S. at 687.  Pivotally, as Mr. Sporn highlights in his affidavit, the evidence presented to the jury demonstrated that the fingerprints did not belong to Mr. Lee, (see Sporn Decl. ¶ 5), which Mr. Sporn further noted in summation, (see Trial Tr. at 4757:12-14).  In counsel's view, that "was as good as we were going to get, and a good reason to leave it alone."  (See Sporn Decl. ¶ 5.)  Counsel's professional judgment not to engage in a

potentially futile expedition for evidence of doubtful probative value is objectively reasonable.[12]  Given that there is no indication of any additional probative value to be gained from evidence identifying the individual to whom the fingerprints belonged, Petitioner's argument falls short.

### 4. Prosecutorial Misconduct Exacerbated Trial Counsel's Allegedly Deficient Performance

While not directly raising a prosecutorial misconduct claim, Petitioner argues that the prosecutor committed misconduct, namely, that (1) the Government withheld its knowledge that Ms. Clark was shown photos of Mr. Lee but did not identify him; (2) misrepresented that Mr. Lee was not a suspect in the Patrick Taylor investigation; and (3) misrepresented that it would make available Detective Smith, the detective who showed Ms. Clark the photographs contained in the PIMS system. (See Pet. Mem. at 27.)  Petitioner claims the foregoing conduct prejudiced him because Mr. Sporn relied "on the prosecutions presumption of good faith," which led Mr. Sporn "to make a serious error when he failed to investigate the available material."  (See id. at 28.)

---

[12] See Strickland, 466 U.S. at 690-91 ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

First, Petitioner's argument that the prosecutor withheld its knowledge that his photo was included in those shown to Ms. Clark, "thwart[ing] [Mr.] Sporn's attempts at settling the identification issue," (see id.), fails for the same reasons that his ineffective assistance claim, explained above, fails.

Second, Petitioner's assertion that the Government knowingly misrepresented that he was not a suspect in the Patrick Taylor investigation fails, at a minimum, to support a showing of prejudice.  While Ms. Garnett, an Assistant United States Attorney, implied that that the police did not have a suspect in mind, (see Trial Tr. at 1806:14-1807:3), a report describing the contents of a phone call implicating Petitioner as a suspect was, as Mr. Lee concedes, turned over by the Government, (see Pet. Mem. at 28; see also id. at Ex. D). Accordingly, the Government's alleged misrepresentation did not "cause[] the court [] improperly [to] assess the identification issue raised by [Mr. Sporn]," (see Pet. Mem. at 27), and thus Petitioner did not suffer prejudice as a result.

Finally, Petitioner's argument that the Government, in response to Mr. Sporn's request, made a "false premise" that it would make Detective Smith available also fails.  (See Pet. Mem. at 27.)  As Mr. Sporn explained, the Government tried to locate the detective but was unable to do so.  (See Trial Tr. at 3343:2-6.)  Moreover, the trial judge noted that "[t]he only

19

thing [the court was] trying to avoid [was] doing discovery on a witness who doesn't know anything about PIMS." (Id.)  And even if Detective Smith was consulted, there is no guarantee that he would have proffered evidence supporting Mr. Sporn's speculations.  As such, Petitioner has not shown that the prosecutor's conduct caused Mr. Sporn to act unreasonably or that Petitioner suffered prejudice as a result.

> b. Oneil Johnson Incident

In or about July 2003, Oneil Johnson was the victim of a robbery and murder.  (See dkt. no. 93, at 8-9.)  Subsequently, Mr. Lee was charged with racketeering, (see id.), and the murder of Mr. Johnson in aid of racketeering activity, (see id. at 25-26).  In relation to that incident and pursuant to Petitioner's § 2255 motion, Mr. Lee raises claims of ineffective assistance of both trial and appellate counsel.

> 1. Ineffective Assistance of Trial Counsel

Regarding the robbery and murder of Oneil Johnson, Petitioner raises a claim of ineffective assistance of trial counsel, asserting that Mr. Sporn (1) failed properly to investigate and use available material; (2) failed to object to the Government's comment made during opening statements; and (3) wrongfully entered into stipulation that Mr. Lee was left-handed.  (See Pet. Mem. at 29-42.)  Petitioner's arguments will be addressed in turn.

A. <u>Insufficient Investigation and Use of Material</u>

Petitioner asserts that Mr. Sporn's assistance was ineffective, in part, because he "failed to investigate and use available material to contest the government's case and impeach government witnesses." (<u>See</u> Pet. Mem. at 29.)  In so alleging, Petitioner claims that Mr. Sporn failed to investigate the DD-5 reports and prepare a defense concerning inconsistencies in the Government's case, namely that while the Government claimed that Government witness Shanikwah Burke <u>was not</u> in the apartment in question at the time of the murder, the responding EMS officers and Officer Dowling, the first responding officer, claimed that Mr. Johnson, in his "dying declaration," told them that Ms. Burke opened the door for the men who shot him, placing her in the apartment.  (<u>See</u> <u>id.</u> at 29-32; <u>see also</u> <u>id.</u> at Ex. F.)

In so alleging, Petitioner contests Mr. Sporn's decision not to cross-examine Detective Coneeley, the individual who interviewed the EMS officers, or, in the alternative, Mr. Sporn's failure to subpoena the EMS officers. (<u>Id.</u> at 29-30; <u>see</u> <u>id.</u> at Ex. F.)  Petitioner further assumes that Mr. Sporn failed to investigate the allegedly false testimony of Mark Gabriel and Ms. Burke stating that Ms. Burke was at the movie theater with

21

Jasmine Parra at the time of the crimes.[13]   (See id. at 35; see also Trial Tr. at 2313:3-9, 2797:15-24.)   Finally, Petitioner claims there was a party at the apartment in question the night before the murder, arguing that Mr. Sporn's failure to interview the guests inhibited him from discovering potentially crucial information.  (See id. at 36.)

Petitioner's claim that Mr. Sporn did not investigate and present evidence regarding inconsistencies in the Government's case is, as the Government asserts, "factually inaccurate." (See Opp'n Mem. at 21.)   Mr. Sporn did highlight these inconsistencies at trial, which Mr. Lee conceded, (see Pet. Mem. at 31), by pointing to, inter alia, the testimony of Keith Harry, (see Trial Tr. at 1101, 4738-39), Ms. Burke, (see id. at 4737), Mr. Gabriel, (see id. at 4742-43), and Officer Dowling,[14] (see id. at 4751:22-4752:3).   (See also Sporn Decl. ¶ 8.)   Mr. Sporn also informed the jury of his belief that the Government

---

[13] Mark Gabriel was involved in the robbery and murder of Oneil Johnson, which he conceded in his testimony during trial.  (See Trial Tr. at 2313-21.)   He explained that he, along with Petitioner, Hibah Lee, Jasmine Parra, Shanikwah Burke, and Petitioner's "baby mother" planned the robbery and that he executed the robbery with Petitioner, Hibah Lee, and Levar Gayle, during which Petitioner shot and killed Mr. Johnson. (See id.)

[14] Importantly, Mr. Sporn also "pushed the theory" that Mark Gabriel was responsible for murdering Mr. Johnson "by highlighting Gabriel's numerous connections to the incident, his motive to kill Johnson . . ., and Johnson's dying declaration to EMS officers naming 'Mark.'"   (See Opp'n Mem. at 21-22; see Trial Tr. at 2196:2-4, 4736-37, 4751:22-4752:3.)

did not have evidence regarding Mr. Johnson's murder besides
witness testimony, (see Trial Tr. at 689:8-15), which he further
explained was potentially unreliable, (see id. at 697:22-698:5).
Further, while Mr. Sporn did not cross-examine Detective
Coneeley, his other attempts to highlight these inconsistencies,
as previously explained, indicate that his conduct was
objectively reasonable.

Next, Mr. Lee's argument that Mr. Sporn should have
interviewed guests from the alleged party lacks merit. The Court
agrees with the Government that (1) even if these unnamed
witnesses were interviewed, the content of their statements is
wholly unknown, and (2) the Government stipulated at trial that
this alleged party never actually took place. (See Opp'n Mem.
at 22; see also Trial Tr. at 4709.) "[R]easonably diligent
counsel may draw a line when they have good reason to think
further investigation would be a waste," Rompilla v. Beard, 545
U.S. 374, 383 (2005), and here, "investigating unnamed guests
from a non-existent party would have been a waste,"[15] (Opp'n Mem.
at 23).

---

[15] ("[A]rguing now in hindsight that Sporn should have cross
examined witnesses on a few additional topics is a 'kind of
strategic decision[] left to the discretion of the trial
counsel.'" (Opp'n Mem. at 22 (quoting United States v. Walker,
24 F. App'x 57, 60 (2d Cir. 2001))).)

In light of the foregoing, Mr. Sporn acted reasonably at every step, and thus his conduct did not cause Petitioner to suffer prejudice.  Accordingly, Mr. Lee's ineffective assistance claim, grounded in Mr. Sporn's alleged failure to investigate and use available materials, fails.

### B. Failure to Object to Government's Comment

Petitioner claims that Mr. Sporn's assistance was deficient because he did not object to the Government's comment made during opening arguments about Mr. Lee's involvement in the robbery and murder of Oneil Johnson, which he argues exacerbated an alleged Bruton violation of his due process rights under the Sixth Amendment's Confrontation Clause.[16]  (See Pet. Mem. at 38–39.)  The comment at issue is as follows: "[W]e will prove that [Levar Gayle] is guilty . . . of participating in a murder of and during an armed robbery in which Hisan Lee shot and killed a victim, a murder that Levar Gayle confessed to in writing to

_____

[16] See U.S. Const. art. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."); Bowen v. Phillips, 572 F. Supp. 2d, 412, 418 ("In Bruton v. United States, the Supreme Court interpreted [the right to confrontation] to prohibit the introduction of a defendant's confession that tends to incriminate a co-defendant when the party incriminated by the statement cannot cross-examine the declarant." (citing 391 U.S. 123 (1998))).  However, admission of "statements that [do] not refer directly to the defendant himself, but [become] incriminating only when linked with evidence introduced later at trial" do not amount to a Bruton violation.  Gray v. Maryland, 523 U.S. 185, 196 (1998) (cleaned up).

federal agents." (Trial Tr. at 663:7-12; <u>see</u> Pet. Mem. at 38-39.)  The confession referred to in that statement confirmed Mr. Gayle's involvement in the Oneil Johnson incident, but it was redacted when read to the jury, replacing Mr. Lee's name with "a guy" or "the guy." (<u>See</u> Pet. Mem. at 38-39; Trial Tr. at 2673:24-2674:8.)  However, Petitioner argues that the redaction was not enough to cure the alleged <u>Bruton</u> violation because (1) the prosecutor "explicitly identified the petitioner as the shooter in the confession to be introduced," and (2) Mark Gabriel had already testified that Petitioner was the shooter, which, when combined, made it "very easy for the jury to connect the dots." (<u>See</u> Pet. Mem. at 39-40; Trial Tr. at 2591:21-23.)

Petitioner's claim of ineffective assistance lacks merit. As asserted by the Government, either no <u>Bruton</u> violation existed at all, or, even if one did, the outcome of the proceeding was unaffected. (<u>See</u> Opp'n Mem. at 24.)  First, assuming there was a <u>Bruton</u> violation, Petitioner himself conceded that Mr. Sporn objected to the admission of statements referencing Mr. Gayle's confession. (<u>See</u> Pet. Mem. at 38; <u>see e.g.</u>, Trial Tr. at 2428:6-8, 4728:18-4729:6.)  Alternatively, even if Mr. Sporn did not object to the comment, there was no <u>Bruton</u> violation to begin with, and thus Mr. Sporn's failure to object was objectively reasonable. Although the Government named Mr. Lee and mentioned Mr. Gayle's confession, it did not state,

or even imply, that the confession itself named anyone else as being involved in the murder.[17]    (See Trial Tr. at 663:7-12.) Further, while Mr. Gabriel's testimony naming Mr. Lee was made before the introduction of Mr. Gayle's redacted confession, Mr. Lee was only incriminated by the confession after it was tied to other evidence presented at trial.    (See id. at 4701-07.)

Moreover, even if introducing Mr. Gayle's confession was a Bruton violation, Petitioner has not shown that he suffered prejudice because of Mr. Sporn's alleged failure to object.    The jury was made aware of substantial additional evidence, proffered by the Government after Mr. Gayle's confession was introduced, indicating that Mr. Lee was Mr. Johnson's shooter, including witness testimony and evidence supporting the likelihood that Mr. Lee was left-handed.[18]    (See Opp'n Mem. at

---

[17] Petitioner relies on Gray, 523 U.S. 185, to assert that "redacting a codefendant's statement by simply replacing references to the defendant may not be enough . . . ." (Pet. Mem. at 40.)    However, this argument is misguided because the facts here are distinguished from those in Gray.    See id. There, the redaction merely replaced the defendant's name with "deleted" or with "a blank space set off by commas."    Id. at 192.    Here, Petitioner's name was replaced with neutral pronouns and no descriptive terms.    (See Trial Tr. at 2673:24-2674:8.)
[18] Such evidence included Shinikwah Burke's testimony that Petitioner told her he was the shooter, (see Trial Tr. at 4703:24-4704:2), Mr. Gabriel's testimony that he was involved in planning the robbery with Hisan and Hibah Lee and that Hisan Lee shot Mr. Johnson, (see id. at 4702:3-6, 4702:22-4703:5), and Dr. Smiddy's testimony that the shooter was likely left-handed, which was consistent with the video introduced showing Mr. Lee throwing a ball with his left hand, (see id. at 1761:11-16, 4704:18-4705:4).

24-25; see also Trial Tr. at 4701-07.)  As such, Petitioner's claim that he suffered prejudice also fails.

## C. Stipulation that Petitioner is Left-Handed

Petitioner also alleges that Mr. Sporn wrongfully entered a stipulation that Petitioner was left-handed.  (See Pet. Mem. at 41-42.)  This issue arose out of the testimony of Dr. Smiddy—the Government's medical examiner—which noted that the location of Mr. Johnson's gunshot wound was consistent with the shooter's being left-handed.  (See Trial Tr. at 1761:11-20.)  Petitioner supports his claim as follows: (1) It was never established that Mr. Lee was left-handed; (2) Dr. Smiddy noted that the shooter also could have been right-handed; and (3) Mr. Sporn never consulted Mr. Lee to establish whether he was left-handed.  (See Pet. Mem. at 41-42.)

The record undermines Petitioner's arguments.  First, Mr. Sporn established through Dr. Smiddy's cross-examination that Mr. Johnson could have been shot by a right-handed individual as well.  (See Trial Tr. at 1761:11-20.)  Additionally, although Petitioner alleges that Mr. Sporn did not consult him about the matter, Mr. Sporn explained that his stipulation was due, in part, to the video introduced showing Mr. Lee throwing a rock with his left hand.  (See Sporn Decl. ¶ 9.)  While trial counsel has a duty to investigate potentially relevant facts, assistance may still be effective even if "counsel does not conduct a

substantial investigation into each of several plausible lines
of defense." Strickland, 466 U.S. at 681.  Accordingly, Mr.
Sporn's decision not to dispute the Government's assertions was
objectively reasonable.

Petitioner also fails to support his contention that he was
prejudiced because of Mr. Sporn's stipulation.  As the
Government argued, even if Mr. Sporn had not entered this
stipulation, it is "extremely unlikely that a jury would have
been persuaded that Lee is not left-handed after viewing a video
in which he favors his left hand."  (See Opp'n Mem. at 25.)
Accordingly, Petitioner's ineffective assistance claim regarding
Mr. Sporn's stipulation fails.

## 2. Ineffective Assistance of Appellate Counsel

Petitioner claims that Mr. Seidler was ineffective because,
despite Mr. Lee's requests, Mr. Seidler did not raise a Bruton
violation on appeal.[19]  (See Pet. Mem. at 38-41.)  Mr. Lee relies
on the same facts and arguments proffered for his claim of
ineffective trial counsel assistance regarding Mr. Sporn's
alleged failure to object to the Government's reference to Mr.
Gayle's confession.  (See id.)  Accordingly, Petitioner's claim
fails for the same reasons his ineffective assistance claim
regarding trial counsel fails.

_____

[19] See Bowen, 572 F. Supp. 2d; see also supra note 23 (describing
the essence of a Bruton violation).

c. <u>Bunny Campbell Incident</u>

In March 2005, Mr. Lee, his co-defendants, and other unknown business associates discussed the robbery of Bunny Campbell. (<u>See</u> dkt. no. 93, at 9-11.) In April 2005, Mr. Lee's co-defendants robbed and murdered Mr. Campbell. (<u>See</u> <u>id.</u>) Subsequently, Mr. Lee was charged with racketeering, namely, conspiracy to commit the robbery of Mr. Campbell. (<u>See</u> <u>id.</u>) However, Mr. Lee was not charged with the actual robbery or murder of Mr. Campbell. (<u>See</u> <u>id.</u>)

In relation to that incident and pursuant to Petitioner's § 2255 motion, Mr. Lee raises claims of (1) prosecutorial misconduct, and (2) ineffective assistance of both trial and appellate counsel.

1. <u>Prosecutorial Misconduct</u>

Petitioner argues that the Government's comments during summation regarding the robbery and murder of Bunny Campbell amounted to prejudicial error because it insinuated his involvement in those crimes, despite the fact that he had not been charged with them. (<u>See</u> <u>id.</u> at 45.) For example, the prosecutor stated, <u>inter alia</u>, "Do we know the third person [involved]? No. . . . Based on phone records and the other evidence in the case, we think it's Hisan Lee." (Trial Tr. at 4713:14-17; <u>see</u> <u>id.</u> at 4715:21-23; <u>see also</u> Pet. Mem. at 45-47.)

First, Mr. Lee claims that the prosecutor made factual assertions that were "not based on record evidence or any reasonable inference." (See Pet. Mem. at 47.) Petitioner points to the Government's reliance on phone records that were not in evidence, (see e.g., Trial Tr. at 4713:14-17, 4717:25-4718:3), and Jonathan Headley and Dwayne Brown's testimony, which did not suggest Petitioner was involved in the crimes, (see Pet. Mem. at 46-48; Trial Tr. at 3509-12). Second, Petitioner argues that the timing of the statements at issue, i.e., during summation, was improper because he and his attorney "were blindsided when it was [too] late to investigate the matter and present a defense." (See Pet. Mem. at 48.) As a result, Mr. Lee claims he suffered prejudice because the Government's comments and reliance on the foregoing evidence framed him as a murderer to the jury. (See id. at 46-48.)

Petitioner's claim is undermined by the record. First, the Government did not allege that Mr. Lee killed Mr. Campbell; rather, it explained that Selbourne Waite told Dwayne Brown he was with Mr. Lee, Delroy Lee, and Bunny Campbell at the time of the murder. (See Trial Tr. at 4715:10-15.) Moreover, and contrary to Mr. Lee's contention, the Government explicitly stated that Petitioner was not charged with Campbell's murder. (See id. at 4713:13-19.)

Generally, it is "unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to . . . the guilt of the defendant." Young, 470 U.S. at 8 (cleaned up). However, even if the prosecutor's comments were improper, Petitioner has not sufficiently alleged that he suffered prejudice because purported misconduct must be analyzed in the context of the trial as a whole to determine whether the proceeding was "so infected with unfairness as to make the resulting conviction a denial of due process." Elias, 285 F.3d at 190 (cleaned up).  The jury was already aware that Mr. Lee was charged with the murders of Patrick Taylor and Oneil Johnson,(see dkt. no. 93), and was presented with substantial evidence supporting those charges, (see Opp'n Mem. at 31). These circumstances alone could have "painted him as a killer", and thus "[a]ny suggestion that Lee was in the room when Bunny Campbell was killed does not amount to any new suggestion that would have unfairly prejudiced the proceedings." (See id. at 31–32.)  Moreover, the Government took steps to avoid misconduct by reminding the jury that Petitioner was not charged with Mr. Campbell's murder.[20]  (See Trial Tr. at 4713:13–19.)

Finally, Petitioner's assertion regarding phone calls not in evidence fails because the call records themselves were

---

[20] See Thomas, 377 F.3d at 245.

introduced in evidence; the only information not introduced was a summary of the calls showing the caller and recipient. (See id. at 4718:13-18.) And the Government explicitly informed the jury that it did not know what was being said in such calls. (See id. at 4721:2-9.) Accordingly, because Mr. Lee has not, at a minimum, sufficiently alleged prejudice, this claim fails.

### 2. Ineffective Assistance of Trial and Appellate Counsel

Regarding the prosecutorial misconduct claim described above, Petitioner claims trial counsel provided ineffective assistance for not objecting to the Government's comments and that appellate counsel provided ineffective assistance for not raising a prosecutorial misconduct claim on appeal, despite Mr. Lee's requests for Mr. Seidler to do so. (See Pet. Mem. at 42-43.) Petitioner relies on the same arguments explained above. However, because Mr. Lee's prosecutorial misconduct claims regarding the Bunny Campbell incident fail, his ineffective assistance claims also fail.

### d. 3770 Decatur Avenue Robbery

To support the various conspiracy charges against Petitioner, the Government introduced evidence regarding an attempted robbery at 3370 Decatur Avenue. (See Opp'n Mem. at 27; see also Trial Tr. at 4667-69.) In relation to that incident and pursuant to Petitioner's § 2255 motion, Mr. Lee

asserts that he received ineffective assistance of appellate counsel, grounded in appellate counsel Alan Seidler's decision not to raise claims Petitioner believes were vital to his case. (See Pet. Mem. at 9-15.)

First, Petitioner alleges that Mr. Seidler "ignored strong issues in favor of weaker ones," notwithstanding Petitioner's requests to Mr. Seidler to raise certain issues on appeal.  (See id. at 11; see also id. at Ex. B.)

Second, Petitioner claims that, despite his requests, Mr. Seidler did not raise a Brady violation in response to the Government's alleged suppression of Hanania Nicholas's statements regarding the 3370 Decatur Avenue robbery, which were introduced at trial to support the conspiracy charge against Mr. Lee.[21]  (See id. at 11-15; see also id. at Ex. C.)  In so alleging, Petitioner relies on the Government's representation during trial that Petitioner, Mr. Nicholas, Hibah Lee, and Levar Gayle were involved in the 3370 Decatur Avenue robbery, about which the Court heard extensive testimony.  (See Trial Tr. at 4667-70; see also Pet. Mem. at 11-13.)  However, at Mr. Gayle's sentencing, the Government allegedly "changed [its] entire

---

[21] See Brady v. Maryland, 373 U.S. 83, 87 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

theory of what happened," claiming instead that only Mr. Gayle
and Mr. Nicholas were involved.  (See Pet. Mem. at 12.)  Mr.
Nicholas had told detectives he was with a "John" and a "Peter"
but he was unclear as to which name was accurate, and Detective
Murray confirmed this fact, adding that Mr. Nicholas further
claimed to have been with a "Kevin," whom he also referred to as
"Lloyd."  (See id.; see also id. at Ex. C.)  Petitioner argues
that Mr. Seidler should have contested the Government's omission
of Mr. Nicholas's statements because disclosure "would have been
sufficiently vital" to his case since "so much of the 404(b)
evidence was uncorroborated and uncontested."  (See id. at 13.)

Petitioner's claim that Mr. Seidler raised weaker issues
and ignored stronger ones fails because he did not support this
allegation in any way; his memorandum merely states that
"[a]ppellate counsel ignored the stronger issues for weaker
ones," relying solely on his communications with Mr. Seidler and
without providing further explanation to support this claim.
(See id. at 11; see also id. at Ex. B.)  Strickland requires a
petitioner to show that counsel's representation "fell below an
objective standard of reasonableness," 466 U.S. at 688, and that
such ineffectiveness caused the petitioner to suffer prejudice,
see id. at 693.  However, because Petitioner here has not
supported his claim with any facts, Petitioner has not satisfied
either prong of Strickland.

Petitioner's second assertion that Mr. Seidler wrongfully failed to raise a Brady violation also lacks merit because, at a minimum, Petitioner has not shown that he suffered prejudice as a result.  As the Government contends, Mr. Lee "was not alleged to have participated directly in the robbery;" rather, Nicholas's statements indicate that only he and Levar Gayle were involved.  (See Opp'n Mem. at 27; see also Pet. Mem. at Ex. C.) Accordingly, "Nicholas's statements that someone else was involved . . . had no impact as to Lee, against whom the 3370 Decatur Avenue robbery was offered only in support of the conspiracy charge."  (Opp'n Mem. at 27-28.)

Moreover, the jury heard Mark Gabriel's testimony that Hisan and Hibah Lee informed him about the robbery, evidencing Petitioner's potential involvement.  (See Trial Tr. at 4668-70.) And there was additional evidence against Mr. Lee evidencing his involvement in other robberies related to the conspiracy charge, (see e.g., id. at 817-19, 1858-61, 1888-90, 2239-41, 2253-55, 2289-91, 3060-62, 3695-99), making it unlikely that Mr. Nicholas's statements would have had any impact on Petitioner's case to begin with.  As such, even if Mr. Seidler had raised the issue on appeal, there is not a "reasonable probability" that the outcome of the conspiracy charge would have been different. See Strickland, 466 U.S. at 669.  As such, Mr. Lee has not shown

that he suffered prejudice because of Mr. Seidler's decision not
to raise a Brady violation, and thus his claim fails.

e. 2041 Strang Avenue Robbery

From approximately March through May 2003, Mr. Lee, his co-
defendants, and other business associates conspired to rob
suspected narcotics dealers at 2041 Strang Avenue, and in May
2003, they attempted to rob that location.  (See dkt. no. 93, at
13-14, 38.)  Subsequently, Mr. Lee was charged with racketeering
and attempted robbery.  (See id.)  In relation to the foregoing
incident and pursuant to Petitioner's § 2255 motion, Mr. Lee
raised a claim of ineffective assistance of trial counsel,
grounded in Mr. Sporn's alleged failure to cross-examine further
Duane Nunes, the robbery victim, as to whether Mr. Lee's face
was one of the faces he saw at the time of the robbery.  (See
Pet. Mem. at 50-51.)

Petitioner relies on the testimony of Mr. Nunes, Bobby
Moore, Mark Gabriel, and Keith Harry to support this contention.
(See id.)  Mr. Nunes claimed he saw four perpetrators but only
saw three of their faces, none of which he recognized.  (See id.
at 2755:11-12, 2760:7-10.)  Further, Mr. Moore and Mr. Gabriel
both confessed to their involvement in the robbery and testified
that Mr. Lee was in the car with Mr. Harry, who was also
participating in the robbery, at the time.  (See id. at 1154:21-
1155:1, 2603:21-23.)  However, Mr. Harry claimed he does not

remember being in the car with Mr. Lee.  (See id. at 4760:24–4761:1.)  Due to the foregoing inconsistencies, Petitioner argues that Mr. Sporn should have cross-examined Mr. Nunes specifically as to whether Mr. Lee's face was one of the faces he saw.  (See id. at 2758–61.)

Petitioner's claim fails both prongs of Strickland.  See 466 U.S. at 687.[22]  First, Mr. Sporn's decision not to question Mr. Nunes further was reasonable given that Mr. Sporn had already established that Mr. Nunes did not recognize any of the men.  (See Trial Tr. at 4755:8–12.)  Moreover, Mr. Sporn established the inconsistencies between Mr. Gabriel and Mr. Moore's testimony, (see id. at 1154:21–1155:1, 2603:21–23), and Mr. Harry's conflicting testimony, (see id. at 4760:24–4761:1).  Thus, Mr. Sporn's decision not to press further the issue of whether Mr. Nunes identified Mr. Lee was reasonable. There is also no evidence to support Petitioner's claim that he suffered prejudice because of Mr. Sporn's conduct.  Even if Mr. Sporn had further cross-examined Mr. Nunes, the outcome of the proceeding likely would have remained the same because the Government presented substantial additional evidence supporting

---

[22] See United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature.").

Petitioner's involvement in the robbery,[23] (see id. at 4676-77), which, on its own, could have instilled doubt in the minds of the jury.  In sum, Mr. Sporn's decision not to further cross-examine Nunes was objectively reasonable and did not result in prejudice to Mr. Lee.  Accordingly, Petitioner's claim of ineffective assistance fails.

### f. Trial Counsel's Failure to Call Potential Witnesses

#### 1. Suzette Rose

Petitioner argues that Mr. Sporn failed to call several witnesses whose testimony he claims would have cast doubt as to Petitioner's involvement in the crimes at issue.  (See Pet. Mem. at 51-58.)  In the context of an attorney's alleged failure to call witnesses, "a petitioner ordinarily must show not only that the testimony of uncalled witnesses would have been favorable, but also that those witnesses would have testified at trial." Rosario v. Bennett, No. 01 Civ. 7142, 2002 WL 31852827, at *33 (S.D.N.Y. 2002) (cleaned up).

First, regarding Petitioner's narcotics charges, Petitioner claims that had Mr. Sporn called Suzette Rose as a witness, her testimony "would have discredited the government's attempt to

---

[23] This evidence included witness testimony by Shanikwah Burke, (see Trial Tr. at 2811-13), and Mark Gabriel, (see id. at 2603:21-23), both evidencing Petitioner's involvement in the robbery, as well as Keith Harry's testimony that Petitioner was involved in planning the robbery, (see id. at 865-66).

link [Mr. Lee] to the drugs found at [the residence he is
allegedly associated with]," (see Pet. Mem. at 52), noting that
the only physical evidence presented to the jury as to the
residence was that marijuana, scales, and thousands of dollars
were found there, (see id. at 51; see also Trial Tr. at 4003:5-
18, 4305:5-8).  Mr. Lee further relies on Ms. Rose's affidavit
in which she described numerous circumstances casting doubt on
the Government's assertion that the residence belonged to
Petitioner.  (See Pet. Mem. at 52.)

   However, the record undermines Petitioner's claim.  Mr.
Sporn submits that he chose not to question Ms. Rose because
"she was not especially cooperative or enthusiastic about
helping [them]," likely because cross-examination would have
induced a discussion of the marijuana found in her apartment.
(Sporn Decl. ¶ 12.)  Mr. Sporn also recognized the risk that if
Ms. Rose was called, the Government would likely question her to
establish a different narrative, which he did not believe "was
[] worth the risk."  (See id. ¶ 13.)  As such, Petitioner has
not shown either that Ms. Rose's testimony would have been
favorable or that she would have testified to begin with.  See
Rosario, 2002 WL 31852827, at *33 (cleaned up).  The decision of
who to call as a witness "is a matter of trial strategy," see
id., and Mr. Sporn's decision here not to call Ms. Rose
constitutes such a decision.

Further, while Mr. Sporn asserted that Petitioner stayed at the residence at times, despite Ms. Rose's affidavit, Mr. Sporn also noted that speculation exists as to whether the residence was Petitioner's, explaining that the apartment and the "Con Ed account" linked to the apartment were both in Ms. Rose's name. (See Trial Tr. at 4745:1-14; Pet. Mem. at 52.)   It is not apparent from the record whether Mr. Sporn corroborated the contents of Ms. Rose's affidavit, but trial counsel's performance need not be perfect; rather, the law only requires assistance to be objectively reasonable.   See Strickland, 466 U.S. at 687-88.   Moreover, Mr. Sporn's cross-examination of Agent Zeppieri, one of the individuals who searched the residence, established that the search did not uncover any evidence linking Mr. Lee to the residence.   (See Trial Tr. at 4305-4312.)   Accordingly, Mr. Sporn's decision not to question Ms. Rose was objectively reasonable because it was made for the benefit of his client, and he took steps to establish the speculation that existed as to the drugs found at the residence.

     2. Paul Love, Anthony Diaz, Bobby Saunders, Neuron
        Christie, and Ava Bright

Next, Mr. Lee claims Mr. Sporn should have called Paul Love, Anthony Diaz, Bobby Saunders, Neuron Christie, and Ava

Bright as witnesses.[24]   (See Pet. Mem. at 55-58.)   This claim is premised on the cumulative effect of trial counsel's failure to call these individuals, not on "whether one or another or less than all of these errors would suffice."   (Id. at 57.)

First, Petitioner claims Mr. Love "was willing to testify that the cooperators were going to lie [about Petitioner's involvement in the conspiracy] to get out of jail," (id. at 54; see id. at Ex. I), and that Mr. Diaz's wanted to testify "to expose the cooperators conspiracy to secure a 5K1 agreement by deceptive means," (id. at 55; see id. at Ex. J).   These claims fail, however, because Mr. Sporn attempted to contact both individuals through case investigator Ron Dwyer, but neither was willing to speak to him or confirm Petitioner's assertions that they were willing to testify, leading to Mr. Sporn's reasonable decision to "not pursue it further."   (See Sporn Decl. ¶ 15; Opp'n Mem. 28-29.)   Because these attempts "did not yield any information that Sporn could have presented to the jury," the outcome of the proceeding likely would have remained the same, undermining a claim of prejudice. (See Opp'n Mem. at 29.)

Next, Petitioner claims Mr. Sporn was ineffective for failing to question Mr. Saunders, implying that his testimony

---

[24] Petitioner previously raised these claims, but the trial judge rejected them when denying his motion for relief pursuant to Federal Rules of Criminal Procedure 29 and 33.   (See dkt. no. 491, at 4-5; see also Opp'n Mem. at 28.)

would have cleared up Keith Harry's testimony "that he heard
Bobby say that Mark robbed and killed Oneil Johnson." (See Pet.
Mem. at 56.)  Petitioner further contests Mr. Sporn's decision
not to call Mr. Christie as a witness because Christie's
identification was found in the bag of narcotics found at the
Patrick Taylor crime scene. (See id. at 57.)  Finally,
Petitioner argues that Mr. Sporn should have questioned Ava
Bright due to Keith Harry's allegedly false testimony that Ms.
Bright carried the drugs at issue in her body, after which she
disposed of them upon her arrest in Virginia. (See id. at 57.)
Petitioner assumes her testimony may have indicated "that Keith
Harry was lying." (Id.)  However, Petitioner has not shown that
Mr. Saunders, Mr. Christie, or Ms. Bright would have been
willing to testify or that their testimony, had they provided
it, would have been favorable. See Rosario, 2002 WL 31852827,
at *33 (cleaned up).  Accordingly, Petitioner's claims regarding
these individuals fails, at a minimum, to support a showing of
prejudice.

    g. Discovery Requests

    Petitioner requests discovery of information the Government
or Mr. Sporn allegedly "has or had in their possession." (See
Disc. Req.)  Petitioner seeks disclosure of: (1) "any and all"
information about the Government's interactions with Maxine
Clark "concerning the identification of the perpetrators of the

robbery," (see id.; see also Pet. Mem. at 15-22); (2) Suzette
Rose's affidavit regarding what the Government represented as
Mr. Lee's residence, (see Disc. Req. at 2-3; see also Pet. Mem.
at 51-54); and (3) "all investigative steps taken [by Mr. Sporn]
regarding [Duane Nunes] to identify the perpetrators . . . [and]
any and all consideration or promise of consideration given to
or on behalf of Nunes particularly, and all witnesses that
testified against Petitioner," (see Disc. Req. at 3-4; see also
Pet. Mem. at 50-51).

The Court agrees with the Government that "[f]or the same
reasons that Petitioner's ineffective assistance claims
concerning Maxine Clark, Suzette Rose, and Duane Nunes lack
merit," (see supra at 12-15, 36-41), "so does Petitioner's
request for discovery," (see Opp'n Mem. at 32).[25]   Petitioner has
not shown good cause because his allegations are insufficient to
give reason to believe he would be entitled to relief if the
facts were "fully developed."   See Bracy, 520 U.S. at 908-09

---

[25] "Petitioner has failed to establish good cause, and his
request for discovery should be denied as nothing more than a
fishing expedition."   (Opp'n Mem. at 32-33.)

(quoting Harris, 394 U.S. at 300).  Accordingly, Mr. Lee's request for discovery is denied.

**IV. Conclusion**

For the foregoing reasons, Defendant's pro se § 2255 petition (Mot. Vacate; dkt. no. 1 in 17-cv-8567) is denied. Because Mr. Lee has not "made a substantial showing of a denial of a constitutional right," a certificate of appealability will not issue.  See 28 U.S.C. § 2253(c)(2).  The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for purpose of an appeal.  Cf. Coppedge v. United States, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is directed to close the open motions (dkt. no. 686 in 07-cr-0003; dkt. no. 1 in 17-cv-8567; dkt. no. 13 in 17-cv-8567) and close case number 17-cv-8567. The Clerk of the Court is further directed to mail a copy of this order to Mr. Lee.


**SO ORDERED.**

Dated: March 17, 2022
      New York, New York

_Loretta A. Preska_

LORETTA A. PRESKA
Senior United States District Judge